IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

FREDERICK GRAY,                      )
                                     )
                   Petitioner,       )
                                     )
v.                                   )          No. CIV-00-562-L
                                     )
MIKE ADDISON, Warden,                )
                                     )
                   Respondent.       )

# **O R D E R**

On April 24, 1997, petitioner was convicted of one count of murder in the first

degree for the death of Sharla Kniess, his girlfriend and the mother of his child.

Original Record at 195 [hereinafter cited as "OR"].  Based on the jury's sentencing

verdict, Oklahoma County District Judge William Burkett imposed a sentence of life

imprisonment.  OR at 208-10.  Petitioner appealed his sentence to the Oklahoma

Court of Criminal Appeals, raising nine grounds for relief.  The Oklahoma Court of

Criminal Appeals affirmed petitioner's conviction and sentence in an unpublished

Summary Opinion on February 12, 1999,[1] and denied the petition for rehearing on

March 25, 1999.

On March 23, 2000, petitioner acting *pro se* filed this action seeking federal

habeas relief.  In the original petition, petitioner asserted ten grounds for relief, the

---

[1]Attachment A to Second Amended Petition for a Writ of Habeas Corpus by
a Person in State Custody Pursuant to 28 U.S.C. § 2254 [hereinafter cited as
"Second Amended Petition"].

first nine of which were identical to the issues presented to the Court of Criminal Appeals. Grounds One, Two, Four, Seven, and Eight asserted that the trial court improperly admitted certain evidence at trial. Grounds Five and Six took issue with the court's instructions, and Ground Three alleged the State failed to present sufficient evidence to establish that petitioner acted with malice aforethought. Petitioner's ninth claim asserted that cumulative error at trial resulted in a violation of petitioner's Due Process rights. In addition to the claims previously raised before the Court of Criminal Appeals, petitioner presented a tenth claim, alleging that appellate counsel was ineffective "for inadequately raising the claim of insufficiency of the evidence." Petition for Writ of Habeas Corpus at 11.c. On June 14, 2000, petitioner sought leave to amend his petition to assert an eleventh claim: that trial counsel was ineffective for "failing to investigate and pursue a defense of insanity at the time of the crime." Motion for Leave to Amend at 11d. Without objection by respondents, the court granted petitioner's motion for leave to amend. On February 1, 2001, petitioner filed a Motion to Appoint Guardian Ad Litem and/or to Appoint Counsel. In the motion, petitioner stated that he "has a history of mental illness and while incarcerated has had numerous relapses" and that "[i]n the event that Petitioner has another relapse, he will be transferred to the Special Care Unit, meaning, among other things, that he will be denied all direct legal access." Motion to Appoint Guardian Ad Litem and/or to Appoint Counsel at ¶¶ 4 and 7.

Pursuant to 28 U.S.C. § 636, this matter was referred to the Honorable Valerie K. Couch for initial decision.  On June 14, 2001, Magistrate Judge Couch issued a Report and Recommendation in which she recommended that the Amended Petition for Writ of Habeas Corpus be denied.  She also recommended denial of petitioner's Motion to Appoint Guardian Ad Litem and/or to Appoint Counsel.  On June 28, 2001, two motions were filed on petitioner' behalf by Bill Cathey, a law clerk at the Oklahoma State Penitentiary: a motion to stay the proceedings and a motion to appoint a guardian ad litem or an attorney.  The Motion for Stay of Proceedings recited that "Petitioner is utterly incapable of responding" to the Report and Recommendation "given the circumstances of his incarceration and his mental infirmities, he is currently denied all legal access and he is not competent to adequately respond."  Motion to Stay Proceedings at 2.  In the affidavit attached to the motion, Mr. Cathey informed the court that petitioner was being housed in the Oklahoma State Penitentiary Special Care Unit.  Affidavit of Bill Cathey at ¶ 9.  Upon receipt of the motions and the response thereto, the court ordered respondents to provide the court with affidavits from petitioner's treating physicians detailing "the history of petitioner's mental illness together with his diagnosis, treatment, and prognosis."  Gray v. Mahaffey, Case No. CIV-00-562-L, Order at 1 (W.D. Okla. Sept. 10, 2001).  After reviewing the evidentiary materials submitted by respondents, the court granted petitioner's Motion to Appoint Counsel.   Gray, Order at 1 (W.D. Okla. Oct. 16, 2001).   Susan M. Otto, Public Defender for the Western District of

3

Oklahoma, was appointed counsel for petitioner.  To give newly appointed counsel sufficient time to respond to the Report and Recommendation, the court also granted petitioner's Motion to Stay Proceedings.  Id.

Thereafter, the court reopened the case and granted petitioner leave to file a Second Amended Petition for Writ of Habeas Corpus so that he could allege his ineffective assistance of counsel claims with more specificity.[2]  The court also granted petitioner's request to expand the record with additional facts and evidence. After examining the record, the court determined that a evidentiary hearing on petitioner's ineffective assistance of counsel claims was required.  At the evidentiary hearing, petitioner presented the testimony of petitioner's two trial attorneys[3], his mother, and Dr. John R. Smith, an expert witness.

Pursuant to 28 U.S.C. § 636(b), the court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  In the Report, Magistrate Judge Couch correctly articulated the standards governing review.  With respect to Grounds One through Nine, petitioner is entitled to habeas relief only if he can establish that the Court of

---

[2]In the Second Amended Petition, petitioner conceded that his eighth claim for relief "does not provide a basis to support habeas corpus relief."  Second Amended Petition at 21.

[3]Petitioner was represented at trial by Assistant Public Defenders for Oklahoma County Bert A. Richard, Jr. and Benjamin C. Brown.  On direct appeal, petitioner was represented by Assistant Public Defender Wendell B. Sutton and Verna Wadlow, a legal intern in the Oklahoma County Public Defender's Office.

Criminal Appeals' determination of his claims was contrary to or an unreasonable

application of clearly established Supreme Court precedent or was an unreasonable

determination of the facts in light of the evidence.  *See* 28 U.S.C. § 2254(d).  As

petitioner's ineffective assistance of counsel claims were not addressed by the state

court, the court must exercise its "independent judgment" in deciding those claims.

LeFevers v. Gibson, 182 F.3d 705, 711 (10th Cir. 1999).  Based on these standards,

Magistrate Judge Couch found that petitioner's challenges to the trial court's

evidentiary rulings did not establish a basis for federal habeas relief.  Likewise, the

Magistrate Judge concluded that petitioner failed to establish that the trial court's

failure to give certain jury instructions amounted to constitutional error.  With respect

to petitioner's sufficiency of the evidence claim, the Magistrate Judge determined

that habeas relief was not warranted since the Court of Criminal Appeals'

adjudication of the issue was not contrary to and did not involve an unreasonable

application of clearly established Supreme Court precedent.   Like the Court of

Criminal appeals, Magistrate Judge Couch found that petitioner was not entitled to

relief based on cumulative error.  Exercising her independent judgment on the

ineffective assistance of counsel claims, the Magistrate Judge found that petitioner's

allegations regarding mental health issues were too conclusory to establish

ineffective assistance of trial counsel.  With respect to his claim for ineffective

5

assistance of appellate counsel, the Report concluded that petitioner could not establish the prejudice prong of the Strickland[4] analysis.

In accordance with the mandate of 28 U.S.C. § 636, the court has performed an exhaustive review of the state court record, petitioner's objections, and this court's case file.  Based on its review of the entire record, including the evidence adduced at the evidentiary hearing, the court concludes that the Second Amended Petition for Writ of Habeas Corpus must be denied.  The court approves and adopts Magistrate Judge Couch's cogent and thorough analysis of Grounds One through Ten.  Although agreeing with her conclusion that petitioner's ineffective assistance of trial counsel claim does not warrant habeas relief, the court writes separately to address the matters raised at the evidentiary hearing.

To establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance was deficient in that it "fell below an objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In applying this test, the court must "give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Bullock v. Carver, 297 F.3d 1036, 1044 (10th Cir.), *cert. denied*, 123 S. Ct. 703 (2002) (*quoting* Strickland, 466 U.S. at 690).

---

[4]Strickland v. Washington, 466 U.S. 668 (1984).

> The proper measure of attorney performance is that of reasonably effective assistance under prevailing professional norms, considering all of the surrounding circumstances. The Court has been crystal clear that "[j]udicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  For that reason, a reviewing court must "reconstruct the circumstances of counsel's challenged conduct [and] evaluate [that] conduct from counsel's perspective at the time."  Because of the difficulties that inhere in such a process, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

Bryan v. Mullin, 335 F.3d 1207, 1217 (10th Cir. 2003) (*en banc*) (citations omitted).

In addition to establishing that counsel's performance was deficient, petitioner must also show that "the deficient performance prejudiced the defense."  Strickland, 466 U.S. at 687.  The court need not address whether counsel's performance was deficient if petitioner fails to prove actual prejudice.  "To make a threshold showing of actual prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  United States v. Taylor, 832 F.2d 1187, 1194 (10th Cir. 1987) (*quoting* Strickland, 466 U.S. at 694).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having

7

produced a just result." <u>Strickland</u>, 466 U.S. at 686.  As noted by the United States

Supreme Court,

> [t]he right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted – even if defense counsel may have made demonstrable errors – the kind of testing envisioned by the Sixth Amendment has occurred.

<u>United States v. Cronic</u>, 466 U.S. 648, 656 (1984).

The evidence presented at the evidentiary hearing focused on petitioner's

claim that trial counsel was ineffective for failing to investigate and pursue a defense

of insanity at the time of the crime.  It is undisputed that petitioner's trial attorneys

were aware that, prior to committing the crime, petitioner had a history of mental

health issues and that records documenting this history existed.  *See* Petitioner's

Exhibit No. 7.  Pretrial notes made by Mr. Brown reflect:

> Get Hospital Records Southwest Medical Center E.R.
> Hillcrest Hospita (sic)
> – Breadown (sic) by △ when 18
> Crisis Center – Overdose by 1995

<u>Id.</u>  Although Mr. Brown labeled file folders to retain the records from these agencies,

there is no evidence that petitioner's attorneys ever retrieved the medical records as

the file folders are empty.  Petitioner's Exhibit No. 11.  Had counsel acquired them,

the medical records would have revealed that petitioner suffered a head trauma

when he was four years old.  Petitioner's Exhibit No. 23 at 1-2.  Ten years later,

petitioner, his mother, and sister attended the Pediatric Psychiatric Clinic at Children's Hospital.  Id. at 3-4.  At age 16, petitioner was admitted to Children's Hospital following a "suicide attempt/gesture".  Id. at 5.  Problems with his girlfriend were noted as the "main factor in earnest gesture."  Id. (emphasis in original).  On February 4, 1993, petitioner was admitted to the emergency room at St. Anthony Hospital where he reported that "he has been depressed and angry for some time 'over my life in general.'" Petitioner's Exhibit No. 24 at 1.  Petitioner was discharged with a diagnosis of "[a]dolescent adjustment reaction with depressed mood."  Id. at 2.  The next day, petitioner was admitted to Hillcrest Hospital Adolescent Mental Health Unit for a psychiatric evaluation.  Petitioner's Exhibit No. 25 at 1-3.  Two years later, petitioner's mother contacted the Oklahoma County Crisis Intervention Center ("Crisis Center") and reported that petitioner "woke up this AM crying and will not stop."  Petitioner's Exhibit No. 26 at 1.  According to the Crisis Center records, petitioner's chief complaint was that he was "[f]eeling depressed all the time and more lately because girl friend says she wants to break up and male friend is going to prison."  Id. at 2.  The family history section reflects that petitioner reported that "mother has been on anti-depressant.  Thinks his mother and uncle have psychiatric diagnoses."  Id.  Petitioner contacted the Crisis Center again on May 5, 1995 after another suicide attempt.  Id. at 4-9.  Nine months later, petitioner again came to the Crisis Center, complaining of depression and inability to sleep.  Id. at 10-11.  At the evidentiary hearing, trial counsel admitted that they did not explore the issue of

9

petitioner's mental illness or a family history of mental illness with petitioner's mother.  If they had done so, Ms. Waterford would have informed them of petitioner's history and that she, her father and her brothers all suffered from some form of mental illness.

In addition to records reflecting petitioner's mental health history prior to the crime, trial counsel had access to records that called into question petitioner's mental status after his arrest, but before his trial.  On July 30, 1996, while in the Oklahoma County Jail, petitioner reported having auditory and visual hallucinations. Petitioner's Exhibit No. 27.  As a result, petitioner was placed in the medical unit for observation.   Five months later – and four months before petitioner's trial – Oklahoma City attorney Ben F. Meek, III wrote a letter to Mr. Richard.  The letter reflects that Mr. Meek's client, Cliff Glaze, who was also an inmate at the Oklahoma County Jail "believes Mr. Gray has some serious mental problem. . . .  He has apparently observed Mr. Gray become virtually catatonic and unresponsive and unrecognizing of anyone around him."  Petitioner's Exhibit No. 1.  Mr. Meek gave his permission for Mr. Richard "to speak with Mr. Glaze without necessity of my presence in regard to these matters."  Id.  While Mr. Richard acknowledged receiving Mr. Meek's letter, there is no indication that he or anyone on his staff contacted Mr. Glaze.

Dr. John R. Smith, a board certified psychiatrist, testified that there is no question that defendant *now* suffers from schizophrenia.  Dr. Smith could not,

however, say with any degree of certainty that – based on the medical records that predate the crime – an insanity defense should have been mounted at the time of petitioner's trial.  Indeed, Dr. Smith indicated that a diagnosis of schizophrenia can be made as early as age 15 or 16 by an expert, but only after symptoms are present for six months.  Thus, a physician would need either continuous care of a patient or more than six months of medical records to make a valid diagnosis of schizophrenia. Prior to the crime, however, petitioner was not seen by any one health care provider on a continuing basis.  Moreover, Dr. Smith admitted that people suffering from petitioner's mental problems can function quite well, except for relationship issues. He noted that he was impressed with petitioner's ability to relate events in the letters he wrote to trial counsel.  This is consistent with counsel's observations that petitioner was  was bright and articulate and that they saw no reason to question his competency.  Neither attorney had any problem communicating with petitioner, nor did they have any reservation about allowing him to testify.

Based on the record, the court concludes that trial counsel's performance was deficient.  Petitioner's trial attorneys were clearly on notice that petitioner had mental health issues, but they failed to investigate.[5]  Given their knowledge that mental health records existed, coupled with the December 1996 letter from Mr. Meek, counsel's failure to investigate "fell below an objective standard of reasonableness."

---

[5]Although petitioner argued that this was a minimally prepared case by overwhelmed attorneys, there was no evidence that counsel did not have sufficient time to prepare.

McLuckie v. Abbott, Case No. 02-1017, slip op. at 14 (10th Cir. July 30, 2003); *see also* Seidel v. Merkle, 146 F.3d 750, 756 (9th Cir. 1998) (counsel with actual or constructive notice of a client's mental problems has duty to investigate in order to make an informed decision regarding the possibility of a mental-state defense).

This finding, however, does not end the court's inquiry as petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance.

> Under the second prong of Strickland, a defendant must demonstrate a "reasonable probability" that counsel's performance prejudiced the defendant, meaning a probability "sufficient to undermine confidence in the outcome." This is less than a preponderance of the evidence, for "a defendant need not show that counsel's deficient performance more likely than not altered the outcome of the trial."

McLuckie, slip op. at 11-12 (citations omitted) (emphasis in original). Petitioner cannot meet this burden. First, as noted in the Report and Recommendation, sufficient evidence existed to support the jury's finding that petitioner was guilty of first degree murder. *See* Report and Recommendation at 16-20. Given that finding of guilt, petitioner received the minimum sentence possible. Second, as noted by Mr. Richard, introducing evidence of petitioner's mental health problems would have been a two-edged sword. Petitioner insisted on testifying at trial; if diminished capacity had been the main defense, however, Mr. Richard would have strongly counseled against his taking the witness stand. Furthermore, petitioner's testimony at trial was consistent with the statements he gave during police questioning: that the

shooting was accidental. While Mr. Richard conceded that a diminished capacity defense would not necessarily have been inconsistent with the defense of accident, permitting the jury to hear that a delusional person was carrying a firearm might have caused the jury to fear defendant. Furthermore, a number of the entries in the mental health records would not have been helpful to the defense as they reflect defendant's violent tendencies, which appeared to be escalating over time. For example, the Admit Note from petitioner's October 3, 1990 visit to the Children's Hospital emergency room states that "[a]ccording to mother he has *on multiple occasions* 'cussed' her out & struck her" and that he got into a "'pushing' fight" with Ms. Kniess. Petitioner's Exhibit No. 23 at 5 (emphasis added). Likewise, the St. Anthony Hospital emergency department record from February 1993 indicates that petitioner "became angry and pushed furniture over and actually pulled a door off the hinges. He reportedly, according to his mother, threatened her, but he did not result (sic) to overt physical violence." Petitioner's Exhibit No. 24 at 1. In April 1995, petitioner informed the Crisis Center that he "has a thought he should kill some body when he's angry . . . ." Petitioner's Exhibit No. 26 at 2. Although it was error for counsel not to have investigated petitioner's mental health, the court cannot say that that failure was "sufficient to undermine confidence in the outcome" of the jury's verdict on either petitioner's guilt or his sentence. As petitioner cannot establish prejudice, he is not entitled to habeas relief on this ground.

In sum, the Report and Recommendation is approved and adopted in its entirety with respect to petitioner's first ten grounds for relief.  For the reasons set forth above, the court also denies habeas relief based on petitioner's claim that trial counsel was ineffective.  The Second Amended Petition for a Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 (Docket No. 57) is therefore DENIED.  Judgment will issue accordingly.

It is so ordered this 6th day of June, 2005.

TIM LEONARD
United States District Judge